**Charlene L. SMITH, Plaintiff,**

v.

**Raymond B. JORDAN, et al.,
Defendants.**

No. C–3–81–024.

United States District Court,
S. D. Ohio, W. D.

Nov. 12, 1981.

---

**169**

Thomas H. Busch, Springfield, Ohio, for plaintiff.

David E. Smith, Springfield, Ohio, Robert F. Cowdrey, Dayton, Ohio, for defendants.

DECISION AND ENTRY ON PENDING MOTIONS; MOTION FOR SUMMARY JUDGMENT BY DEFENDANT JORDAN GRANTED IN PART AND DENIED IN PART; MOTION FOR SUMMARY JUDGMENT BY DEFENDANT WOLVERINE INSURANCE COMPANY GRANTED IN PART AND DENIED IN PART; CONFERENCE CALL SET

RICE, District Judge.

The captioned cause is before this Court upon motions for summary judgment by two of the defendants in this action: Raymond B. Jordan, Sheriff of Clark County, Ohio, and the Wolverine Insurance Company (Wolverine).

Jordan's motion for summary judgment is made on the ground that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Wolverine moves for summary judgment on the ground that there is no genuine issue as to any material fact relative to Wolverine's bond coverage for the loss and damages sustained by the plaintiff, and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Watkins v. Northwestern Ohio Tractor Pullers*, 630 F.2d 1155, 1158 (6th Cir. 1980).

For the reasons set forth below, the motion by Jordan is granted in part and denied in part. Said motion is granted as to Plaintiff's assertions of causes of action directly under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. In all other respects, Jordan's motion is denied. For the reasons set forth below, Wolverine's motion is granted in part and denied in part. Said motion is granted as to Plaintiff's claim seeking to hold Wolverine liable as an insurer for the faithful performance of duty by the Defendant, Linda Clevell. In all other respects, Wolverine's motion is denied.

## I. FACTS

The facts in this case are relatively straight-forward and, for the most part, not contested by the parties. Plaintiff was arrested on January 27, 1980, on a charge of passing bad checks and taken to the Clark County Jail in Springfield, Ohio. At the jail, plaintiff was searched by defendant Clevell, a deputy at the jail, in a manner commonly referred to as a "strip-search." The search was conducted in a small bathroom adjacent to the book-in area, and during the search plaintiff removed all of her clothing, except for her underpants, at Clevell's request. Jordan took no part in the search, and plaintiff was released from custody after the search was concluded.

The parties do disagree on several important facts. First, plaintiff alleges that when she asked Clevell why her clothing had to be removed, Clevell responded that "it was standard procedure." Clevell admits making this statement, but Jordan denies any sort of knowledge about or participation in the search. Second, the parties disagree as to whether plaintiff's body was exposed to male deputies and onlookers during· the search. Finally, the parties disagree as to whether Clevell, prior to the search, had a real suspicion supported by objective facts that plaintiff was concealing contraband on her body.

Plaintiff has sued defendants Jordan and Clevell under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and under 42 U.S.C. § 1983, for violations of her constitutional rights and for embarrassment, humiliation, and emotional stress, invoking the jurisdiction of this Court pursuant to 28 U.S.C. § 1343. Plaintiff also alleges that these defendants committed state law torts against her. In addition, plaintiff sued Wolverine, alleging that Wolverine was the surety of the faithful performance of the duties of the Sheriff and the employees of the Sheriff's Office. Wolverine, in turn, cross-claimed against Clevell and Jordan, seeking indemnity from those defendants for any and all sums adjudged against Wolverine in this action.

## II.  MOTION BY DEFENDANT JORDAN

### A.  *Plaintiff's Section 1983 Claim*

Sheriff Jordan seeks to escape liability under 42 U.S.C. § 1983,[1] for Clevell's allegedly unconstitutional search by characterizing plaintiff's basis of recovery against him as resting on the doctrine of respondeat superior. In other words, defendant argues, plaintiff seeks to hold him liable simply on the basis of being the superior of Clevell.

■■■ Defendant correctly argues that, under § 1983, there is no liability based *solely* on respondeat superior. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Coffy v. Multi-County Narcotics Bureau*, 600 F.2d 570, 580 (6th Cir. 1979); *Redmond v. Baxley*, 475 F.Supp. 1111, 1115 (E.D.Mich.1979). However, plaintiff's complaint, when fairly read, does not predicate liability *solely* on the basis of respondeat superior. As noted above, plaintiff alleges that she was told by Clevell that the search she was subject to was "standard procedure" at the jail. While Clevell admitted making this statement, Jordan denies that any such procedure existed. The existence of such a disputed fact (whether this procedure was in use at the jail) precludes the granting of summary judgment on § 1983 liability in Jordan's favor pursuant to Fed.R.Civ.Pro. 56.

■■■ Defendant argues that the barrier of respondeat superior can only be surmounted when the superior actually participated in or was present during the alleged unlawful conduct. This assertion represents an unduly narrow view of the law concerning § 1983 liability. It is clear that superiors may be found liable for the acts of subordinates which are the "custom or usage" of the governmental unit, *Monell, supra*, 436 U.S. at 691, 98 S.Ct. at 2036, or "represent official policy," *id.* at 694, 98 S.Ct. at 2037, 2038, or are part of a "persuasive pattern" of conduct, *Rizzo v. Goode*, 423 U.S. 362, 374–75, 96 S.Ct. 598, 605–06, 46 L.Ed.2d 561 (1976). As summarized by the *Monell* court, § 1983 can impose liability on a superior when that official "under color of some official policy, 'causes' an employee to violate another's constitutional rights." 436 U.S. at 692, 98 S.Ct. at 2036 (quoting the language of § 1983). In the instant case, plaintiff's allegation that strip searches were a "standard procedure" at

---

**1.** Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

the jail *may* form part of a "custom or usage" or an "official policy," and thus may form a basis for Jordan's § 1983 liability. The existence of such a procedure, as well as the extent of Jordan's formulation and implementation of the procedure (if any), present disputed factual issues not resolvable on summary judgment. *Madewell v. Garmon*, 484 F.Supp. 823, 824 (E.D.Tenn. 1980).

■ Defendant cites *Knipp v. Weikle*, 405 F.Supp. 782 (N.D.Ohio, 1975) for the proposition that a superior's personal presence or participation in the unlawful conduct is required. As stated above, this proposition ignores case law subsequent to *Knipp* and, in addition, misreads the *Knipp* opinion. In *Knipp*, a case factually similar to the instant action, the Court granted summary judgment for a sheriff when the plaintiff did not allege that the sheriff "was present, knew of or that he participated in the unlawful conduct" of a deputy. *Id.* at 783. This Court does not believe that the *Knipp* court was attempting to make an inclusive list of conduct for which a superior could be held liable for acts of a subordinate. Moreover, to the extent that *Knipp* lends support to defendant's "personal participation" theory, that theory has clearly been overridden by *Monell* and *Rizzo v.*

*Goode*, as noted above. *See Redmond v. Baxley, supra*, at 1115–16.[2]

Plaintiff also seeks to hold Jordan vicariously liable for Clevell's actions based on an Ohio statute. The statute in point states that:

> The sheriff shall be responsible for the neglect of duty or misconduct in office of each of his deputies.

O.R.C. § 311.05.

■ This statute has no application to plaintiff's § 1983 action and thus does not control Jordan's liability. Presumably, plaintiff is attempting to incorporate the Ohio statute into her § 1983 action pursuant to 42 U.S.C. § 1988. Section 1988 states that in § 1983 actions, if federal law is "deficient" in providing a remedy, state law may be applied "so far as the same is not inconsistent with the Constitution or Laws of the United States."[3]

At the outset, it is not clear that the Ohio statute need be applied to remedy a deficiency in plaintiff's cause of action. State law has been applied under § 1988 when "federal law provides no rule of decision" on an issue in a § 1983 action. *Board of Regents v. Tomanio*, 446 U.S. 478, 484, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980). *See, e. g., Robertson v. Wegmann*, 436 U.S.

---

2. This conclusion does not conflict with the Sixth Circuit's decision in *Wilson v. Beebe*, 612 F.2d 275 (6th Cir. 1980) (per curiam). That case involved a § 1983 suit against a police superior over a shooting incident involving a subordinate. The court held that "a § 1983 action will not lie against police supervisory officers for failure to prevent police misconduct, absent a showing of *direct responsibility* for the improper action." *Id.* at 275–76 (emphasis added) (citing *Rizzo v. Goode, supra*). *See also, Coffy v. Multi-County Narcotics Bureau, supra*, 600 F.2d at 580 (superior must be shown to be "somehow personally at fault by actively participating in, encouraging or directing the commission of illegal acts by his subordinates"). Jordan's enforcement of a strip-search policy would constitute, this Court believes, "direct responsibility," encouragement or direction of a subordinate's actions. Moreover, the *Coffy* court specifically acknowledged that a superior's liability could arise from implementation of an unconstitutional policy, citing *Rizzo v. Goode. Id.* Thus, the Sixth Circuit clearly has not adopted the "personal par-

ticipation" theory as the *only* basis for § 1983 liability of a superior official.

3. Section 1988, in pertinent part, provides that:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause. . . .

584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978) (state survivability of action statute); *Board of Regents v. Tomanio, supra* (state tolling statute). In contrast, there is federal case law concerning the applicability of respondeat superior in § 1983 actions, as outlined above. Moreover, even if the Ohio statute did apply in this action, it would be clearly "inconsistent" with federal law concerning respondeat superior. Ohio law holds that O.R.C. § 311.05 simply is a restatement of the doctrine of respondeat superior, *Huth v. Woodard*, 108 Ohio App. 135, 161 N.E.2d 230 (Summit County, 1958), and as such clearly conflicts with *Monell*'s position on that doctrine. *See also, Knipp v. Weikle, supra*, at 784–86.

Thus, even excepting Plaintiff's reliance on O.R.C. § 311.05, her complaint sets forth genuine issues of fact regarding Jordan's liability under § 1983 which precludes the granting of summary judgment.

## B. *Implying Causes of Action Under Constitutional Amendments*

■■■ Plaintiff's complaint may also be read as implying causes of action directly under the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution. As a practical matter, implying such causes of action appears to be redundant in the present case, since § 1983 already provides a remedy against state officials who deprive persons of their constitutional rights. In any event, this Court holds that plaintiff may only state an implied cause of action under the Fourth Amendment, and that respondeat superior, as in § 1983 actions, does not apply.

In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court implied a cause of action directly under the Fourth Amendment to provide a remedy due to damages resulting from unreasonable searches and seizures by federal officials. A *Bivens* action has since been extended to authorize suit against *state* officials. *See, e. g., Knipp v. Weirkle, supra*. Thus, a *Bivens* action under the Fourth Amendment would be permitted in the

present case. However, courts have expressly held that respondeat superior does not apply in a *Bivens* action. *Jones v. City of Memphis*, 586 F.2d 622, 625 (6th Cir. 1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1230, 59 L.Ed.2d 464 (1979); *Dean v. Gladney*, 621 F.2d 1331, 1335–36 (5th Cir. 1980), *cert. denied*, 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1980). Jordan would be thus liable in a *Bivens* cause of action under the Fourth Amendment to the same extent (if any) he is liable under § 1983.

■■■ In contrast, plaintiff cannot state implied causes of action directly under the Fifth, Sixth or Fourteenth Amendments. First, plaintiff's complaint sets forth no facts which would give rise to violations of the Fifth or Sixth Amendments. The complaint describes in some detail the search of her person, and concludes that "the Plaintiff was the victim of an unreasonable search, without need nor justification, and an intrusion on her personal privacy and dignity." Complaint, ¶ 12. The alleged violations of Plaintiff's constitutional rights outlined in the complaint are only actionable under the Fourth Amendment. Second, for similar reasons, the complaint sets forth no facts which would give rise to a violation of the Fourteenth Amendment. At best, Plaintiff might be said to have been deprived of a "liberty" interest without due process of law under the Fourteenth Amendment. However, this formulation would require the intrusion on Plaintiff's privacy in this case to be a constitutionally protected right of privacy above and beyond the protection of privacy afforded by the Fourteenth Amendment. The right of privacy recognized in the Constitution is a relatively narrow one, limited to protection against government interference in matters relating to marriage, procreation, contraception, child rearing and education. *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). Plaintiff's allegations with respect to the invasion of her privacy simply do not rise to the level of a fundamental right protected by the Constitution. Moreover, courts which have decided cases not dissimilar to the instant case

have examined allegations of an invasion of privacy during a strip search exclusively under the Fourth Amendment. *See, e. g., Doe v. RenFrow,* 475 F.Supp. 1012, 1024 (N.D.Ind.1979), *aff'd in part, remanded in part on other grounds,* 631 F.2d 91 (7th Cir. 1980) (*per curiam*); *Bilbrey v. Brown,* 481 F.Supp. 26, 27 (D.Or.1979).

For these reasons, the complaint states a *Bivens* cause of action under the Fourth Amendment. However, the complaint does not state implied causes of action under the Fifth, Sixth or Fourteenth Amendments. To the extent the complaint alleges an invasion of Plaintiff's constitutionally protected right of privacy, that right is only cognizable under the Fourth Amendment.

### C.  *State Law Actions*

■ Plaintiff's complaint also alleges that defendants' conduct violated state tort law. Plaintiff has not indicated to this Court which torts the defendants allegedly committed under Ohio law. Presumably, such torts would include invasion of privacy and the intentional infliction of emotional harm. Since such torts arose from the "same nucleus of operative facts" which provides the basis for plaintiff's § 1983 action, the state law claims are cognizable in this Court under the doctrine of pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In summary, defendant Jordan's motion for summary judgment is granted to the extent that plaintiff's cause of action is grounded on O.R.C. § 311.05, and implied causes of action under the Fifth, Sixth and Fourteenth Amendments. In all other respects, disputed facts exist which preclude summary judgment in favor of defendant.

### III.  MOTION BY DEFENDANT WOLVERINE

Wolverine has insured Jordan and the employees of the Sheriff's Office under separate bonds. In September of 1979, Wolverine entered into a Public Employees Blanket Bond which named the Commissioners of Clark County as obligee and the employees of Clark County as insureds. In December of 1979, Wolverine entered into a Surety Bond which named the State of Ohio as obligee and Jordan as principal.

Wolverine's defense to liability under the Surety Bond rests on plaintiff's failure to state a § 1983 cause of action. This defense, also relied upon by Jordan, has been rejected above. Wolverine concedes that the terms of the bond (Doc. # 18, exh. A) do not preclude liability if a dollar remedy is entered against Jordan in this action. Thus, summary judgment in favor of the defendant Wolverine with respect to its liability under the Surety Bond is not warranted.

■ The different terms of Wolverine's employee bond leads to a different result. First, the bond states that only the obligee (Clark County commissioners) or the insured (Clark County employees) may bring suit to recover on account of any loss under the Bond. Plaintiff is neither an obligee nor an insured, and thus, by the terms of the employee bond, cannot bring suit against Wolverine. Second, the bond does not cover liability for "the deprivation or violation of the civil rights of any person" or for "the tortious conduct of an Employee." (Doc. # 18, exh. B). Under these terms, Wolverine would not be liable for Clevell's alleged violation of plaintiff's civil rights or for her alleged tortious conduct under state law.

This conclusion is lent further force by Wolverine's assertion, not contested by plaintiff, that the employee bond is not one entered into pursuant to statute. Section 325.17 of the Ohio Revised Code requires deputy sheriffs to provide surety bonds to the state. Wolverine states by affidavit (Doc. # 27) that the employee bond was entered into with the Clark County commissioners, and is not a statutory bond under O.R.C. § 325.17, since the State of Ohio is not a party to the bond. The fact that the employee's bond was not entered into pursuant to statute considerably attenuates plaintiff's theory (a theory not wholly persuasive in any event) that the restrictive

terms of the bond conflict with public policy and should be read out of the bond. *Cf.* 30 O.Jur.2d *Insurance* § 233 (1958).

In summary, Wolverine's motion for summary judgment is granted with respect to liability alleged under the employees bond, but denied with respect to the Surety Bond for the same reasons that Jordan's motion for summary judgment on plaintiff's § 1983 claim was denied.

## IV. CONCLUSION

Accordingly, for the aforestated reasons, Jordan's motion for summary judgment is hereby granted in part and denied in part. Wolverine's motion for summary judgment is hereby granted in part and denied in part.

A conference call will be had between Court and counsel at 8:40 a. m. on Tuesday, November 17, 1981, to discuss further procedures in this case, including, but not limited to, the setting of a trial date and other dates.