**Milton SUTTON and Emma Sutton, Plaintiffs-Appellees,**

v.

**Phillip R. BLOOM, Defendant-Appellant.**

**No. 80–3058.**

United States Court of Appeals, Sixth Circuit.

Argued March 31, 1983.

Decided June 27, 1983.

Paul Mancino, Jr. (argued), Mancino, Mancino & Mancino, Cleveland, Ohio, for defendant-appellant.

Michael T. Honohan, Benesch, Friedlander, Coplan & Aronoff, Barbara Friedman (argued), Cleveland, Ohio, for plaintiffs-appellees.

Before MERRITT and MARTIN, Circuit Judges, and PORTER, Senior District Judge.*

MERRITT, Circuit Judge.

Appellant, Phillip Bloom, appeals from a jury verdict and judgment against him in

* The Honorable David S. Porter, Senior District Judge for the Southern District of Ohio, sitting by designation.

this housing discrimination case for $33,-101.34 in compensatory damages and $30,-000.00 in punitive damages. The appellees, Milton and Emma Sutton, are a black married couple who attempted in January, 1973 to purchase a home on Wenhaven Drive in Russell Township, Ohio. The Suttons brought this action in the District Court for the Northern District of Ohio under 42 U.S.C. §§ 1981, 1982 and 1985 claiming that Phillip Bloom, who lived next door, and seven other neighbors acted to prevent their purchase of the home in order to keep black persons out of the neighborhood. A pendent state law claim alleging malicious prosecution was dismissed by the District Court. During the proceedings, the seven other defendants prevailed, entered into settlement agreements with the Suttons, or were dismissed by the District Court.

The Suttons sought to purchase the house owned by Martin and Sally Hawthorne. The property was subject to a foreclosure decree entered on December 11, 1972, on behalf of Central National Bank. On January 24, 1973, the Hawthornes accepted an offer from the Suttons to purchase the home for $42,000. The agreement was conditioned on the Suttons first selling their own home and on the plumbing of the Hawthorne home being in good working condition. The Hawthornes in turn had the right to continue to show the home to secondary buyers, but if a secondary offer were received, the Suttons had three days to remove the two conditions and finalize the purchase.

After the Suttons and Hawthornes signed the conditional purchase agreement, the appellant became interested in the Hawthorne property. Bloom made a secondary offer on the house which was rejected when the Suttons withdrew their conditions. Despite the Suttons' purchase agreement, the Bank elected to proceed with a sheriff's sale of the foreclosed upon property. The Bank is not a party in this case, and no claim of

discrimination or breach of contract against it is before us.

One night before the foreclosure sale, Bloom held a meeting of neighbors at his house to organize an attempt to prevent the Suttons from purchasing the Hawthorne home. Bloom collected $1000 from each of three neighbors which, together with his $1000, would provide the $4000 downpayment (10% of their maximum intended bid) for the home. At the sheriff's sale, Bloom outbid the Suttons with a bid of $40,000. On March 28, 1973, however, the Court of Common Pleas of Geauga County refused to confirm the sheriff's sale to Bloom finding that the agreement between the Suttons and the Hawthornes gave the Suttons the benefit of the owner's equity of redemption. After several appeals by Bloom, this order was finalized by the Court of Common Pleas on March 18, 1974.

Bloom then brought suit simultaneously in the Court of Common Pleas and in the Federal District Court in May 1974, charging the Suttons with depriving him of his statutory and constitutional rights to purchase the home. The state and federal courts, at both the trial and appellate levels, rejected these actions under the principle of res judicata or for failure to state a claim.

■ The Suttons then brought this suit in the District Court on July 30, 1976, seeking compensatory and punitive damages to vindicate their rights under the Constitution and under §§ 1981, 1982, and 1985. The Suttons showed at trial that Bloom had assembled his neighbors and pursued his attempts to purchase the Hawthorne property for improper discriminatory motives. The jury found that Bloom violated the constitutional and statutory rights of the Suttons. We are compelled to reverse the decision of the district court because we find that the case is barred by the statute of limitations.

Neither § 1981, which prohibits discrimination in the making or enforcing of contracts,[1] nor § 1982, which guarantees equal

---

1. 42 U.S.C. § 1981 provides in full:
   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and en-

force contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white

rights to purchase property,[2] contain statutes of limitations. To ascertain the proper statute of limitations, the court must look to the most analogous state statute. *See Runyon v. McCrary*, 427 U.S. 160, 180, 96 S.Ct. 2586, 2599, 49 L.Ed.2d 415 (1976); *Warner v. Perrino*, 585 F.2d 171, 173 (6th Cir.1978) ("Thus, where Congress has not otherwise spoken, federal judges are obliged to apply the law of the forum, which includes state statutes of limitations, to suits brought in federal court."). The appellant argues that the 180 day statute of limitations contained in the Ohio Fair Housing Act, O.R.C. § 4112.051(A), should apply. The appellees maintain that the District Court was correct when it found the six year statute of limitations contained in O.R.C. § 2305.07 most analogous.

■ Sections 1981 and 1982 of Title 42 were enacted as part of the Civil Rights Act of 1866 in order to eliminate the vestiges of slavery and racial discrimination. The underlying factual situation in this lawsuit involves the attempt by Bloom to interfere with the Suttons' equal rights to enter into a contract (§ 1981) and to buy property (§ 1982). Both statutes cover the discrimination present in this case, but that does not imply that each statute may be viewed in isolation when finding the most analogous state statute. The District Court and the appellee isolated the word "contract" in § 1981. They then looked to the Ohio statute, O.R.C. § 2305.07, which governs the statute of limitations for contracts not in writing:

> ... an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued.

They have ignored the circumstances surrounding the interference with the Suttons' right to contract which involve racial discrimination. We believe that the most analogous state statute, when viewing the

facts of this case in total, is the Ohio Fair Housing Act. O.R.C. § 4112.02(H) broadly covers discrimination in housing and property ownership, including the right to be free from discrimination when making a contract to purchase a home. The relevant part of § 4112.02(H) provides:

> It shall be an unlawful discriminatory practice:
>
> (H) For any person to:
>
> (1) Refuse to sell, transfer, ... or otherwise deny or withhold housing accommodations from any person because of the race, color, religion, sex, ancestry, handicap or national origin of any prospective owner, occupant, or user of such housing.
>
> \*   \*   \*   \*   \*   \*
>
> (12) Coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person's having exercised or enjoyed ... any right guaranteed or protected by division (H) of this section ....

The Ohio Fair Housing Act applies to the factual circumstances of this case. It seeks to protect against the same injustices which the federal Civil Rights Act of 1866 sought to combat.

The statute of limitations for actions brought under § 4112.02(H) is contained in O.R.C. § 4112.05(A):

> The rights granted by division (H) of section 4112.02 of the Revised Code may be enforced by aggrieved private persons by filing civil actions in a court of common pleas.... A civil action shall be commenced within one hundred eighty days after the alleged discriminatory housing practice occurred.

Our conclusion is supported by the decision of this Court in *Warner v. Perrino*, 585 F.2d 171 (6th Cir.1978). In that case, the plaintiff filed suit against the owner of a two-family home in Cleveland alleging that

---

citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**2.** 42 U.S.C. § 1982 provides as follows:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

she had refused to show or rent an apartment to him because he was black. The complaint alleged violations of 42 U.S.C. § 1982 and the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617. We held that the applicable Ohio statute of limitations for the § 1982 cause of action was the 180 day limit contained in O.R.C. § 4112.051(A). We noted that:

> Although section 1982 speaks broadly of contract rights and is wider in scope than either the state and federal fair housing laws, the conduct at issue here involves only an allegation of housing discrimination on the basis of race and falls squarely within the purpose and reach of Ohio's fair housing laws.

*Warner, supra,* at 175. Unlike the plaintiff in *Warner,* the Suttons have included a claim under § 1981 for violation of their contract rights but the *essence* of their claim is racial discrimination in housing. As in *Warner,* this "falls squarely within the purpose and reach of Ohio's fair housing laws," particularly the proscription in § 4112.02(H)(12) against third-party interference because of race with the right to purchase housing.

The District Court and the appellees rely on another case from this Circuit which applied Ohio's six year statute of limitations to a § 1981 cause of action. In *Mason v. Owens-Illinois, Inc.,* 517 F.2d 520 (6th Cir. 1975), the plaintiff charged that the company had engaged in unlawful employment practices by refusing to promote and by discharging him solely because of his race. We held that this § 1981 cause of action was not barred by the 180 day statute of limitations contained in the Ohio Civil Rights Act but was governed instead by O.R.C. § 2305.07 on contracts not in writing.

We do not find *Mason* controlling in this case because of the difference between Ohio's statutes of limitations in employment and in housing discrimination cases. The Ohio Civil Rights statute on employment discrimination is governed by the statute of limitations contained in § 4112.05(B) which sets up an administrative as opposed to a judicial process for grievance resolution. The 180 day limitation period per-

tains to the amount of time within which an injured party must file a complaint with the state civil rights commission. If a complaint is ever filed in court, it is filed by the Commission and not the private litigant. The Commission has an additional 180 days to file a complaint in court. In contrast, the 180 day period provided for in § 4112.-051(A), for housing discrimination, relates to the period within which a grievant must initiate a judicial proceeding. As is made clear in the dicta in *Mason,* this Court refused to apply the 180 day limit contained in § 4112.05(B) in *Mason* precisely because a different process—administrative as opposed to judicial—is used in employment discrimination cases brought under the Ohio Civil Rights Act than is used in § 1981 cases. There is no difference between the procedures utilized for state housing discrimination cases and those used for a § 1981 suit.

We noted in *Mason* that the shorter limitations period of 180 days might have seemed more appropriate to the Ohio legislature when the responsibility for the investigation and development of the case rested with the administrative body rather than with a private litigant. *Mason, supra,* at 522. In contrast, the Ohio Legislature has clearly found it appropriate to require the private litigant to seek redress for housing discrimination within six months. For these reasons, we apply the holding in *Warner* and not *Mason,* and find that the most analogous state statute is the 180 day statute of limitations in § 4112.051(B).

The parties are in agreement that, if applied, the 180 day statute of limitations creates a bar to this action. The discriminatory acts complained of by the Suttons occurred in 1973 and 1974. The Suttons instituted this proceeding in the District Court on July 30, 1976. We need not discuss whether the series of suits initiated by Bloom against the Suttons tolls the statute of limitations because the final order in those proceedings was entered on January 8, 1976—more than six months prior to the Suttons' case.

For these reasons, we reverse the decision of the District Court.

DAVID S. PORTER, Senior District Judge, dissenting:

I respectfully dissent from the Court's decision reversing the district court's judgment on the ground that this case is barred by the 180-day statute of limitations contained in the Ohio Fair Housing Act, O.R.C. § 4112.051(A). I would affirm the district court's holding that the applicable statute of limitations in this case is the six-year limitations period provided in O.R.C. § 2305.07 for liabilities created by statute, and that therefore the action is not time-barred. The fundamental reason for my disagreement with the Court on this issue is that I do not believe this is simply a "housing discrimination case." In support of my position, I feel compelled to give a fuller statement of the operative facts.

I.

On January 18, 1973, the Suttons entered into an agreement to buy property which was in the process of foreclosure by Central National Bank of Cleveland. When Bloom, the owner of the property located next door to the subject property, learned of the Suttons' agreement, he immediately presented a secondary offer to purchase the property. The Suttons then withdrew the contingencies to their offer and Bloom failed to obtain the subject property by a superseding contract.

Despite the Suttons' purchase agreement, Central National Bank elected to proceed with the scheduled sheriff's sale of the foreclosed upon property. The sheriff's sale was scheduled for February 8, 1973. On the night prior to the sheriff's sale, Bloom and three of his neighbors met in the basement of Bloom's home to plan to outbid the Suttons at the sale. Bloom and the three neighbors agreed to bid up to $40,000.00 at the sale, and each agreed to contribute $1,000.00 for the 10% downpayment that would be required. At the sheriff's sale,

Bloom appeared and bid $40,000.00, outbidding the Suttons for the property.

On March 28, 1973, the Court of Common Pleas of Geauga County, Ohio refused to confirm the sheriff's sale of the subject property to Bloom, and instead awarded the property to the Suttons on the ground that the Suttons, by virtue of their purchase contract, had the benefit of the owner's equity of redemption in those proceedings.[1]

Bloom then filed a notice of appeal from the Order of the Common Pleas Court, and while the appeal was pending, obtained a stay of execution of the judgment. Bloom thereby blocked the Suttons from taking possession of the property while the appeal was pending. The appeal was dismissed by the Ohio Court of Appeals, without dissent, because it clearly had been taken from a non-appealable order. Bloom then applied to the Court of Appeals for reconsideration of its dismissal, but the application was denied and the case was remanded to the Geauga County Common Pleas Court.

On March 18, 1974, the Common Pleas Court again ruled that the sheriff's sale should not be confirmed, and entered a final order transferring title to the Suttons. Bloom once again appealed to the Ohio Court of Appeals and filed a motion to stay execution of the judgment. That time, the Court of Appeals overruled the motion to stay the proceedings. Then, after the Common Pleas Court entered its final judgment on March 21, 1974, dismissing the foreclosure action, Bloom, for a third time, filed a motion to stay execution. The Court of Appeals again overruled Bloom's motion to stay on April 4, 1974.

On February 18, 1975, the Court of Appeals heard the case on its merits and affirmed the trial court. Bloom once again moved for a reconsideration, and once again the Court of Appeals affirmed the trial court's decision.

Thereafter, Bloom moved the Court of Appeals for an order certifying the case to the Ohio Supreme Court on the ground that

---

1. Bloom had filed a motion with the Common Pleas Court on March 23, 1973, requesting that he be made a party to the foreclosure litigation.

there was a conflict between its decision and that of another Court of Appeals in Ohio. The Court of Appeals overruled the motion to certify, and Bloom appealed to the Supreme Court of Ohio. The Ohio Supreme Court, *sua sponte,* disposed of Bloom's appeal on October 24, 1975.

After that line of litigation, Bloom commenced two others. In May 1974, Bloom filed an action in the Geauga County Common Pleas Court against the Suttons seeking, *inter alia,* $100,000.00 in actual damages and $3,000,000.00 in punitive damages on the basis of an alleged willful, malicious, intentional and illegal participation in a "conspiracy" to deprive Bloom of his constitutional and statutory right to purchase the subject property. The trial court, finding no merit in this claim, dismissed it on the pleadings, holding that the matter was *res judicata* due to the earlier litigation. Bloom again appealed, and once again, the Court of Appeals upheld the trial court, holding, *inter alia,* that Bloom had failed to state a claim against Sutton. Bloom once more applied for reconsideration and his motion was overruled. He then appealed that decision to the Ohio Supreme Court, and such appeal was dismissed *sua sponte* on January 8, 1976.

At the same time that Bloom filed his second action in the Geauga County Common Pleas Court, he filed a companion case, substantially similar to the Geauga County action, in the United States District Court, Northern District of Ohio, Eastern Division, seeking $100,000.00 compensatory and $3,000,000.00 punitive damages, alleging that the Suttons had conspired with others to purchase the real estate in question. The district court (Thomas, J.) dismissed the complaint for failure to state a claim under 42 U.S.C. § 1983. Bloom then moved for a new trial or for a rehearing. That motion was denied. Bloom appealed from the district court's decision to this Court. This Court rejected the appeal, concluding that ". . . this action is nothing more than an attempt to utilize jurisdiction for the purpose of reversing or modifying the civil judgment of the state court. . . ."

The Suttons maintain that, "[t]he ultimate result of all of the actions of the Appellant and the complex web of legal maneuvers was to deprive the Suttons of actual possession of their home for an entire year, to harrass [sic] and annoy them for many months thereafter and to cost them legal fees exceeding $15,000.00." Brief of Appellees at 6.

On July 30, 1976, the Suttons filed the instant action alleging that their constitutional rights guaranteed by 42 U.S.C. §§ 1981, 1982 and 1985 had been violated, and further, that they had been victims of a course of malicious prosecution. The claim of malicious prosecution was dismissed.

The evidence at trial showed that Bloom had been motivated in his actions by his desire to prevent blacks from moving into the neighborhood. On this basis, the jury returned a verdict against Bloom in favor of the Suttons.

II.

The Court concludes that the most analogous state statute is the Ohio Fair Housing Act, which it says "broadly covers discrimination in housing and property ownership, including the right to be free from discrimination when making a contract to purchase a home." Yet appellees filed this action under section 1981, which prohibits discrimination in the making and enforcement of contracts, as well as under section 1982, which guarantees equal rights to purchase real and personal property.

Admittedly, the same facts are the basis for plaintiffs' claims under both sections 1981 and 1982; however, plaintiffs stated two separate causes of action. The thrust of plaintiffs' cause of action under section 1981 is the enforcement of their statutorily-created right to contract, and redress for a course of extreme conduct interfering with that right. In this regard, it does not matter that the contract was for a home. It could have been a contract for employment or for personal property. What is significant is that appellant Bloom interfered with the Suttons' right to contract because the Suttons are black.

Thus, I conclude that this is not a typical housing discrimination case. The defend-

ant-appellant here is not the owner of the subject property, but a third party who was bent on preventing the enforcement of the Suttons' contract to purchase the property. He executed his discriminatory mission not only by making a second offer for the property and by organizing his neighbors for the purpose of outbidding the Suttons at the sheriff's sale, but also by instituting a barrage of litigation to frustrate the Suttons' enjoyment of the same contractual rights as white persons.

Furthermore, an individual who establishes a cause of action under section 1981 may, under certain circumstances, obtain punitive damages. *Johnson v. Railway Express Agency,* 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). Punitive damages, however, are not available under the Ohio Fair Housing Act. Section 4112.-051(E) of that Act, O.R.C. § 4112.051(E), only provides for injunctive relief and "actual damages, together with the court costs." Thus, for this reason as well, I conclude that the cause of action asserted by the Suttons under section 1981 is broader than a cause of action under the Ohio Fair Housing Law, and that the rationale for applying the 180-day limitations period of the state's housing act is inapplicable.

I conclude that the most analogous state cause of action is an action upon a liability created by statute, the statute here being section 1981. Accordingly, I would apply Ohio's six-year limitations period contained in O.R.C. § 2305.07, as the district court did, and affirm the district court's judgment

that this action is not time-barred.[2] Since I would not have dismissed the action as untimely, I would have reached the other issues on appeal.

**2.** I disagree with the Court that the district court and the appellees isolated the word "contract" in § 1981 and for that reason applied the limitations period provided in O.R.C. § 2305.07 governing contracts not in writing. First, I doubt that the contract involved in this case was an oral contract. Moreover, the district court cites language from *Mason v. Owens-Illinois, Inc.,* 517 F.2d 520 (6th Cir.1975), which indicates that the six-year limitations period was applied because it covers actions upon a liability created by statute. Cf. *Balmes v. Board of Education,* 436 F.Supp. 129, 132 (N.D. Ohio 1977) (a cause of action commenced in Ohio under § 1981 is limited by a six-year statute of limitations).

I recognize that my position in this case could be latched onto by plaintiffs in federal

housing discrimination actions who want to circumvent the six-month statute of limitations contained in Ohio's housing discrimination statute, since nearly every housing discrimination case involves interference in the making or enforcement of contracts. I therefore wish to emphasize that this is a unique case. I believe that the facts of *this* case support my conclusion that this is not a typical housing discrimination case, and that the cause of action asserted here is broader than a cause of action under the Ohio Fair Housing Law. I propose that the court consider the facts of each case presented to determine whether or not the plaintiff added a section 1981 claim to the complaint only in an effort to avoid the shorter limitations period, and disallow any such attempted circumvention.