**Emmett BANKS, et al., Plaintiff,**

v.

**CITY OF FOREST PARK, Defendant.**

No. C–1–84–213.

United States District Court, S.D. Ohio, W.D.

Oct. 9, 1984.

C. Gregory Schmidt, Norman F. Hoover, Cincinnati, Ohio, for plaintiff.

Thomas R. Yocum (Trial Attorney), Ralph Crisci, Cincinnati, Ohio, for defendant.

MEMORANDUM AND ORDER GRANTING IN PART, DENYING IN PART AND NOT RULING IN PART ON DEFENDANTS' MOTION TO DISMISS

SPIEGEL, District Judge.

This matter is before the Court on defendants' motion to dismiss (doc. 5), plaintiffs' memorandum in opposition (doc. 7), and defendants' reply (doc. 10). This case is premised on plaintiffs' contentions that they have been deprived of constitutional rights in violation of 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Plaintiffs also seek redress for violations of state law under the theory of pendent jurisdiction.

I. Facts

Plaintiff Emmett Banks is the owner of real property and the residence constructed thereon at 1338 Waycross Road, Forest Park, Hamilton County, Ohio. Plaintiff Bernice Banks is Mr. Banks' wife. The couple have resided at the above-mentioned address for the past seven years. In their complaint, the plaintiffs allege that several officials of the City of Forest Park have maintained a systematic campaign of discriminatory enforcement of local ordinances against plaintiffs because of their race. Defendants deny any such discriminatory treatment. Furthermore, defendants contend that plaintiffs' action is barred by the applicable statutes of limitations, that certain of the defendants are immune from suit, that plaintiff Bernice Banks states no actionable claim of constitutional deprivations, and that the claims brought by plaintiff directly under the constitution are merely redundant and should therefore be dismissed.

Plaintiffs allege that local officials denied them equal protection of the laws through a racially discriminatory plan to drive them from the community. The specific allegations lodged by the plaintiffs in their complaint are as follows:

On October 31, 1978, plaintiff Emmett Banks was cited for violation of § 150.19 of Forest Park's Zoning Code for having a truck with a rated weight of greater than ½ ton parked in his driveway. Plaintiffs' contend that white neighbors and residents of Forest Park are permitted to park such vehicles in their driveways.

On October 31, 1979, plaintiff Emmett Banks was cited for violation of §§ 155.05

and 155.06(A) of Forest Park's Zoning Code, relating presumably to a prohibition against open foundations and safety hazards. Plaintiffs deny any violation of these codes, and contend that white residents are freely permitted to violate such sections.

From 1979–82, while plaintiffs attempted construction of an in-ground swimming pool, they were continually cited for violations of Forest Park's building code, required to obtain building permits and perform work not required by the ordinances of Forest Park and not demanded of white residents. As a result, plaintiff Emmett Banks was "cited to Court, fined, and imprisoned." (doc. 1, p. 10, ¶ C).

In June of 1979 plaintiffs replaced their front porch with a wooden deck without first obtaining a building permit. Plaintiffs allege that city officials were aware of the construction, yet waited sixteen months before citing plaintiff Emmett Banks, required his appearance in Mayor's Court, and demanded the submission of plans and purchase of a building permit after the work was completed. Plaintiffs contend that similarly situated white residents of Forest Park are not so treated.

Pursuant to orders of the Forest Park Building Inspector, plaintiffs constructed a fence around their swimming pool. This fence was allegedly inspected and approved by the building inspector on September 3, 1981. On October 15, 1981 a writ of capias was issued by the Forest Park Mayor's Court for the arrest of Emmett Banks. Although the complaint is unclear at this point, the writ of capias was presumably based upon a violation of the city ordinances relating to the adequacy of the fence. Seven months after the writ was issued, Emmett Banks was arrested by a Forest Park police officer, and detained pending his posting of $113.00 bond, while the Forest Park Building Inspector drafted and served upon Emmett Banks three citations for the very violation for which plaintiff was arrested. When Emmett Banks subsequently appeared in Forest Park Mayor's Court, he was served with three addi-

tional citations for violations of the same ordinance.

During these proceedings in the Forest Park's Mayor's Court Emmett Banks was not represented by counsel, nor did he waive such right. Similarly, during these proceedings, in which he faced maximum penalties of $800.00, Emmett Banks did not waive his right to a jury trial in writing as he contends is required by Ohio Rev.Code §§ 2938.04, 2937.08, 2945.17. Mr. Banks was found guilty on all eight charges, fined $100.00 on each charge with $90.00 suspended on each charge, and was granted a stay of execution of approximately five months. Thereafter, Emmett Banks was arrested on December 16, 1982 for failure to comply with the order of the Mayor's Court notwithstanding his earlier compliance with that order.

After Emmett Banks appealed his convictions to Hamilton County Municipal Court, the City of Forest Park dropped all charges.

 When passing on a motion to dismiss the court must determine whether it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When the motion to dismiss raises an affirmative defense, the question is whether the affirmative defense is clearly presented by the allegations of fact in the complaint. *McNally v. America States Insurance Co.,* 382 F.2d 748 (6th Cir.1967); 5 C. Wright & A. Miller *Federal Practice & Procedure Civil* § 1357. However, for the purposes of passing on a motion to dismiss under Rule 12(b), Fed.R.Civ. P., the factual allegations in the complaint should be considered as true and the court should consider all reasonable inferences therefrom. *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). In the context of this § 1983 action, what we must consider in determining the adequacy of plaintiff's claim is

(1) whether the conduct complained of was committed by a person acting under color of state law; and

(2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).

## II. Statute of Limitations

It is now well-settled, since Congress has not established a uniform statute of limitations for actions under the Civil Rights Acts, that the appropriate statute of limitations should be borrowed from state law. *Burnett v. Grattan,* —— U.S. ——, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984); *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The parties to this action do not deny that the applicable statute of limitations must be drawn from Ohio law; they do, however, disagree as to which Ohio statute of limitations should govern.

Defendants contend that the operation of two Ohio statutes of limitations bars plaintiffs' action in its entirety. Specifically, defendants urge application of the 180 day statute of limitations, relevant to causes of action under Ohio's Fair Housing Act (Ohio Rev.Code §§ 4112.02(H), 4112.05(A)), to all plaintiffs' claims associated with their residence and the alleged scheme to induce them to abandon their dwelling. Defendants contend that the remainder of plaintiffs' claims, *i.e.,* those relating to proceedings in Forest Park Mayor's Court, are barred by application of the one-year period of limitations designated for actions founded on false arrest and false imprisonment. Ohio Rev.Code § 2305.11. Plaintiffs contend that the constitutional deprivations here involved are necessarily broader than the state causes of action alluded to above, and hence, the applicable statute is Ohio's four-year statute of limitations for injuries to rights of plaintiffs not otherwise enumerated in other statutes of limitations. In advancing this assertion, plaintiffs rely heavily on the earlier decision of this Court in *Schorle v. City of Greenhills,* 524 F.Supp. 821 (S.D.Ohio 1981).[1]

There are four Ohio statutes of limitations arguably applicable to this action. First, there are the two statutes advanced by defendants as discussed above (Ohio Rev.Code § 4112.02(H), 180 days for actions under Ohio's Fair Housing Act; Ohio Rev.Code § 2305.11, one-year for actions for false imprisonment, including false arrest). In addition, Ohio Rev.Code § 2305.09 provides four years in which to bring actions on rights not otherwise enumerated in Ohio's statute of limitations scheme. Finally, Ohio Rev.Code § 2305.07 provides six years in which to bring an action on liability created by statute, other than a forfeiture or penalty. As the last incident in the alleged scheme to deprive plaintiffs of their constitutional rights occurred on December 16, 1982 (doc. 1, p. 14, ¶ 20(K)), and this action was filed on February 6, 1984, application of the 180 day and one-year statute would bar this action, while application of either the four-year or the six-year statute would allow plaintiffs to proceed.

Although it is clear that the governing statute of limitations must come from Ohio law, the methodology by which the choice is made bears repeating. The three-step process by which federal courts borrow a state rule of decision under the Civil Rights Act is contained in 42 U.S.C. § 1988. This process was recently summarized by Justice Marshall, writing for the Court, as follows:

> First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." If

1. Although the facts in *Schorle,* 524 F.Supp. at 822, are similar to those alleged in this case, we do not think a routine application of our earlier decision is appropriate. As developed below, the recent decisions of the United States Supreme Court as well as those of the Sixth Circuit have subtly refined the analysis appropriate to cases of this nature, and have rendered a case-by-case analysis the most prudent approach.

no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the Constitution and statutes" of the forum state. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States."

104 S.Ct. at 2928–29 (quoting 42 U.S.C. § 1988) (citations omitted).

As this methodology has been applied, several touchstones have emerged. The Supreme Court has described the federal court's task as one of choosing the "most appropriate" state statute of limitations. *Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); later in the same opinion, the Court less directly characterized the task as searching for the statute of limitations governing a "closely analogous claim." *Id.* at 464, 95 S.Ct. at 1722. More recently, the Court elaborated on the second characterization and defined the inquiry as a search for "the state law of limitations governing an analogous state cause of action." *Board of Regents v. Tomanio*, 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980) (citing *Johnson*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721). Most recently, the Court indicated its preference for focusing the inquiry on the "most appropriate" state statute of limitations in *Burnett v. Grattan*, — U.S. ——, 104 S.Ct. 2924 (1984).

There is more at stake here than a semantic tug-of-war. For as the facts of both *Burnett* and the instant case indicate, the subtle shift in focus from the most appropriate statute of limitations to the statute of limitations of the most analogous state cause of action may result in a disregard for the peculiarly federal or constitutional aspects of a given § 1983 action. In *Burnett*, plaintiffs brought employment discrimination claims against administrators of a state university under 42 U.S.C. §§ 1981 and 1983. Although the state provided avenues for redress of employment

discrimination claims, those avenues contemplated administrative remedies rather than civil actions. Commenting that the goals served by the administrative procedure were not the goals served by the Civil Rights Acts, and cautioning that the most appropriate statute of limitations is one responsive to the peculiar nature of causes of action under the constitution or federal statutes, the Court held that borrowing the statute of limitations from the state administrative procedures was inappropriate. *Burnett*, 104 S.Ct. at 2923.

The danger of concentrating on the period of limitations governing the most analogous state cause of action is even greater under the facts of the instant case. Plaintiffs here allege facts which arguably support claims for housing discrimination, false arrest and false imprisonment under Ohio law. However, the factual allegations also present colorable claims for redress for distinctively federal claims and constitutional deprivations. Specifically, plaintiffs allege a denial of equal protection, a denial of the right to assistance of counsel, a denial of the right to a jury trial, and what is essentially a denial of the substantive due process right to enjoy one's liberty. It is readily apparent that these claims are not coterminous with state law causes of action which would assume federal dimensions only due to the involvement of one acting under color of state law (such as a § 1983 claim based upon a simple assault by a police officer). Instead, here the equal protection claim, in particular, is born of the individual actions which would support state tort claims, but represents a claim that is different in nature from, and therefore necessarily broader than the sum of its parts. Herein lies the problem. If emphasis is placed upon selecting the statute of limitations applicable to analogous state causes of action, then, due to the similarity of some elements of plaintiffs' claims to state claims for housing discrimination and false arrest, the state claims are presumed to be appropriate analogues for the entire action. The end result is that the constitutional claims based upon equal protection, substantive due process, right

to a jury trial and assistance of counsel are regarded as mere appendages to the state claims, and are pared away and disregarded. In contrast, emphasis on determining the most appropriate statute of limitations acknowledges the presence of constitutional claims for which there are no well-defined analogous state causes of action and permits application of a statute of limitations that regards the entire action and all claims therein with equal dignity.

The wisdom of the approach taken here is that it entails an independent evaluation of the appropriateness of various statutes of limitation as applied to a cause of action that is both independent from, and of different nature, than the state claims with which it is associated. As the Supreme Court has recognized,

> [t]hese causes of action [arising under the Constitution and federal statutes] exist independently of any other legal or administrative relief that may be available as a matter of federal or state law. They are enforceable in the first instance.

*Burnett,* 104 S.Ct. at 2930; *see also Board of Regents v. Tomanio,* 446 U.S. at 491, 100 S.Ct. at 1798. ([T]here is no question that respondent's § 1983 action was 'separate and independent' from the state judicial remedy pursued in state court."). Within the same paragraph as the quoted language above, the *Burnett* court instructs that

> an appropriate limitations period must be responsive to these characteristics of litigation under the federal statutes. A state law is not "appropriate" if it fails to take into account practicalities that are involved in litigating federal civil rights claims and policies that are analogous to the goals of the Civil Rights Act.

104 S.Ct. at 2930.

 In light of this clear instruction, we conclude that, upon the facts of this case, Ohio's statutes of limitations governing housing discrimination claims and false imprisonment claims are not appropriate statutes of limitations for this § 1983 action. If a state statute of limitations is inappropriate in a § 1983 action due to its design for administrative application, a state statute is certainly inappropriate if its application ignores plaintiffs' independent federal cause of action merely due to its coincidental coexistence with the state causes of action contemplated by the statute. In this sense, both the method and scope of analysis as well as the application of the particular statute chosen must recognize the predominance of the federal interest and should be "not inconsistent with the Constitution and the laws of the United States." 42 U.S.C. § 1988.

The approach taken here is consistent with recent Sixth Circuit authority. Defendants, in urging application of the 180 day housing discrimination statute of limitations, contend that *Sutton v. Bloom,* 710 F.2d 1188 (6th Cir.1983), *cert. denied,* 104 S.Ct. 985, 79 L.Ed.2d 221 (1984), requires such a result. We disagree. Upon our reading of *Sutton,* that case countenances both the method of analysis suggested above as well as the rejection of the 180 day statute on the facts presented here.

First, in *Sutton* the court speaks in terms of the most analogous state statute of limitations. This defines the objective as one of determining the appropriateness of the statute of limitations and not one of merely finding a superficially similar state cause of action. Second, the *Sutton* court emphasized that the proper approach is to determine the essence of plaintiffs' claim in choosing an appropriate statute. *Id.* at 1191. Implicit in this emphasis is the suggestion that a case-by-case analysis is most useful in choosing a state statute of limitations for a § 1983 action. Finally, an examination of the facts as alleged in *Sutton* demonstrates the inappropriateness of the 180 day statute in the instant case. In *Sutton* plaintiffs brought suit under 42 U.S.C. §§ 1981, 1982 and 1985 to combat a particularly zealous and protracted campaign undertaken by private landowners to prevent plaintiffs from purchasing adjacent real property. It was in this factual context that the court concluded that:

The Ohio Fair Housing Act applies to the factual circumstances of this case. It seeks to protect against the same injustices which the federal Civil Rights Act of 1866 sought to combat.

*Id.* at 1190. Under the factual circumstances of this case, we cannot say that the Ohio Fair Housing Act seeks to afford plaintiffs the same protection sought by § 1983, *viz:* to protect them from an alleged systematic and concerted effort by local officials to deny them equal protection of the laws.

By limiting our holding to these facts, we stop short of holding that a constitutional violation or a § 1983 action always states a cause of action broader than a common law tort action. The point here is that when a constitutional claim or a § 1983 claim is necessarily broader than coincidental state claims due to the absence of any truly analogous state cause of action, the district court should, in addition to examining the statutes of limitations applicable to any coincidental state claims, conduct an independent inquiry to determine which statute of limitations, within a state's statutory scheme, is most appropriate for the federal claim.

Our inquiry as to the appropriateness of the remaining two state statutes of limitations is abbreviated by the temporal context of this case. Application of either the four-year statute "for injury to the rights of the plaintiff not arising on contract nor enumerated in [Ohio's limitations of actions statutory scheme]," Ohio Rev. Code § 2305.09 (Pages 1981), or the six-year period applicable to "liability created by statute other than a forfeiture or penalty." Ohio Rev.Code § 2305.07 (Pages 1981) will permit this action to proceed. We need not decide between the two.

### III. Immunity of Local Officials

■ Defendants contend that several of their number are immune from suit for damages under § 1983. Specifically, defendants contend that prosecutorial immunity insulates Forest Park City Solicitor Ralph F. Crisci, and that judicial immunity

protects Mayor Brandon H. Wiers, First Vice-Mayor Harold Smith, and Second Vice-Mayor George Fraley from suit.

The Supreme Court has held that a prosecutor is absolutely immune from a civil suit for damages under § 1983, for actions taken in the initiation and prosecution of the state's case. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). However, the Court specifically declined to rule that a prosecutor's absolute immunity extends to actions not connected with the judicial phase of the proceedings. *Id.* at 430, 96 S.Ct. at 994. The Sixth Circuit has suggested, in *Windsor v. The Tennessean,* 719 F.2d 155 (6th Cir.1983), that a prosecutor should enjoy only a qualified immunity for all acts administrative in nature, or in other words, acts outside the prosecutor's quasijudicial function. *Id.* at 164. As the Supreme Court noted, the procedural distinction between qualified and absolute immunity is significant as the latter defeats the lawsuit at the outset, while application of the former must await a factual determination. *Imbler,* 424 U.S. at 419 n. 13, 96 S.Ct. at 989.

Applying these principles to the instant case, we conclude that Forest Park City Solicitor Ralph F. Crisci should be dismissed as a defendant in this case. Plaintiffs make no specific allegations against Crisci, and consequently, plaintiffs have not asserted that Crisci committed improprieties outside his quasi-judicial function. Under these circumstances, the absolute immunity articulated in *Imbler,* 424 U.S. 409, 96 S.Ct. 984, governs, and requires dismissal.

■ We decline to rule at this time as to the judicial immunity, if any, to be afforded defendants Wiers, Smith and Fraley for their actions relating to proceedings in Forest Park Mayor's Court. Judicial immunity is not absolute and does not extend to instances in which a judge acts "in clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978), (quoting *Bradley v. Fisher,* 80 U.S. 335, 13 Wall. 335, 351, 20 L.Ed. 646 (1872)). As noted by

the Court, the existence of state statutes or case law defining an absence of jurisdiction is a significant factor in assessing a question of judicial immunity. *Stump*, 435 U.S. at 358, 98 S.Ct. at 1105. The limitations placed upon a Mayor's Court's exercise of jurisdiction by Ohio Rev.Code §§ 2937.08, 2938.04 may define a clear absence of jurisdiction. However, these statutory sections define jurisdiction in terms of maximum penalties for offenses. The complaint is sufficiently ambiguous concerning the maximum penalties for the offenses involved and the cumulative effect of those penalties, to warrant postponement of a ruling on the issue of judicial immunity. In addition, the Sixth Circuit has held that judicial immunity from suits for damages does not extend to acts not normally performed by a judicial officer. *Sevier v. Turner*, 742 F.2d 262 at 271–72 (6th Cir. Aug. 8, 1984). For these reasons we therefore reserve judgment on whether defendants Wiers, Smith and Fraley are entitled to a cloak of judicial immunity.

■ Likewise, we cannot, at this embryonic stage in this lawsuit rule on the issues of any immunity that might be afforded Police Chief James A. Nienam, or whether his dismissal would be proper for other reasons. Although defendants correctly cite *Hays v. Jefferson County, Kentucky*, 668 F.2d 869 (6th Cir.1983), for the proposition that Nienam's liability cannot rest solely on the doctrine of respondeat superior, plaintiffs allege that Nienam was personally involved in the alleged scheme to deny them equal protection of the laws. This obvious factual issue precludes the dismissal of Nienam as a defendant.

## IV. Punitive Damages

■ Defendants seek dismissal of claims for punitive damages against the City of Forest Park. As plaintiffs agree, under the reasoning in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1980), that no claim for punitive damages lies against the municipality, there is no issue requiring resolution.

## V. Claims of Plaintiff Bernice Banks

■ Defendants seek dismissal of the claims of plaintiff Bernice Banks, and advance the contention that she has not pleaded any deprivation of her constitutional rights. Under the reasoning of this Court in *Sell v. Price*, 527 F.Supp. 114 (S.D. Ohio 1981) (Rice, J.), we agree that the claims of plaintiff Bernice Banks must be dismissed. Although the facts alleged would have necessarily caused Mrs. Banks no small degree of vexation, the complaint clearly alleges that it was Mr. Banks who was subject to the alleged constitutional deprivations.

## VI. Plaintiffs Constitutional Claims

■ Finally, defendants seek dismissal of the constitutional claims which plaintiffs seek to enforce directly under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments. Defendants object to these claims in large part due to their redundancy. Absent countervailing concerns, plaintiffs should be permitted to proceed on dual theories of recovery. Therefore, insofar as redundancy is the sole objection, we will permit plaintiff to proceed on the constitutional claims as well as the § 1983 claim.

Defendants admit that the Sixth Circuit has not ruled on the issue of parallel § 1983 and implied constitutional claims. However, defendants assert that the Sixth Circuit has intimated its disapproval of concomitant constitutional claims in a § 1983 action in *Harris v. City of Canton*, 725 F.2d 371, 374 n. 3 (6th Cir.1984). However, as we read that footnote, the Court declined to decide the issue, and merely related the reasoning of those courts which disallow parallel constitutional claims. At this point, we are more inclined to follow the lead of Judge Rice, who, in *Smith v. Jordan*, 527 F.Supp. 167 (S.D.Ohio 1981), recognized the redundancy of implied causes of action under the Constitution in a § 1983 action, but nevertheless permitted a

claim based on the Fourth Amendment to proceed. *Id.* at 172–73.[2]

■ While we will permit plaintiff to proceed under implied constitutional causes of action, we conclude that plaintiffs' First Amendment claim, resting presumably on rights of privacy must be dismissed. As recognized in *Smith*, 527 F.Supp. at 172,

> [t]he right of privacy recognized in the Constitution is a relatively narrow one, limited to protection against government interference in matters relating to marriage, procreation, contraception, child rearing and education.

*Id.* (citing *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, *reh'g denied*, 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976)). While the Banks might argue that the actions taken against Mr. Banks adversely affected their marriage, we would perceive such an allegation as too attenuated to afford relief under the First Amendment.

■ The last matter for our consideration is whether plaintiffs' procedural due process claim for deprivation of a property interest is barred by a failure to plead inadequacy of state remedies. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Vicory v. Walton*, 721 F.2d 1062 (6th Cir.1983). First, we resist the temptation to characterize plaintiffs' due process claim as procedural in nature. Plaintiff alleges that he was arrested and incarcerated. He therefore asserts a deprivation of a liberty interest more appropriately categorized under the constitutional protection of substantive due process. As the Sixth Circuit recently noted, where a liberty interest is involved, the requirement of *Parratt*, 451 U.S. at 527, 101 S.Ct. at 1908, that plaintiff plead and prove the inadequacy of state processes is inapplicable. *Wilson v. Beebe*, 743 F.2d 342 (6th Cir.1984). The court's reasoning is sound, because where a liberty interest is concerned, state processes are inherently inadequate. "Sections 1983's purpose is to en-

sue the vindication of constitutional rights [and] state tort remedies do not serve that function. *Id.* Second, insofar as plaintiffs assert deprivation of a property interest, we are of the opinion that plaintiffs' claim is not barred by failure to plead the inadequacy of state processes in compliance with this requirement. On the facts alleged in the complaint, defendants' suggestion that the City of Forest Park building and zoning codes contain numerous procedures for obtaining variances and similar relief begs the question of the adequacy of state remedies. Implicit in plaintiffs' contention that these laws were enforced in a discriminatory manner is the allegation of the inadequacy of any remedies thereunder. Furthermore, when plaintiffs pursued state processes by appealing the Mayor's Court decision, defendants dropped the charges, and plaintiffs' constitutional claims have never been addressed. We therefore conclude that plaintiffs have met the burden of pleading an inadequacy of state remedies. We therefore refuse to dismiss any claim alleging interference with a property interest without procedural due process.

In accordance with the foregoing, it is hereby ordered that plaintiffs' federal claims are not time-barred; that defendant Ralph F. Crisci shall be dismissed as party defendant to this action; that plaintiff Bernice Banks' claims shall be dismissed, and that plaintiffs' First Amendment claim for invasion of privacy shall be dismissed. It should also be understood that, due to factual ambiguities, this Court expressly reserves judgment on the issues of the judicial immunity claims of defendants Wiers, Smith and Fraley.

SO ORDERED.

---

**2.** The § 1983 claims and the implied constitutional causes of action may or may not be governed by the same statute of limitations. *See Harris v. City of Canton,* 725 F.2d at 374 n.

**3.** As this action is timely brought under either the six- or the four-year statutes we need not distinguish between the two types of claims.